IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 20-cv-1456-WJM

CHRISTINE A. MILES,

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

Defendant.

---

## ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

---

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Christine A. Miles challenges the final decision of Defendant, the Commissioner of the Social Security Administration ("Commissioner"), denying her application for supplemental security income. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Miles was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the ALJ's decision is affirmed.

## I. BACKGROUND

Miles was born in 1984 and was 32 years old on the alleged onset date of August 10, 2017. (Administrative Record ("R.") at 186 (ECF No. 16).) Miles completed high school. (R. at 25.) In the years preceding the alleged onset date, she worked in childcare, customer service, and as a beauty advisor. (R. at 232.)

Miles applied for supplemental security income on August 11, 2017. (R. at 16.)

She claimed that she is disabled due to the following severe impairments: post-traumatic stress disorder ("PTSD"), anxiety disorder, major depression, bulimia nervosa, gastroparesis, bipolar II, insomnia, right side sciatica problems, female issues, lower back pain, neck pain, plantar fasciitis in both feet, encephalopathy, and concussion.  (R. at 67.)  Her application was denied on January 9, 2018.  (R. at 83.)  Miles requested and received a hearing in front of an ALJ, Jamie Mendelson.  (R. at 35, 95.)  On June 19, 2019, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]  (R. at 13.)

At step one, the ALJ found that Miles had not engaged in substantial gainful activity since August 11, 2017.  (R. at 18.)

At step two, the ALJ found that Miles has the following severe impairments: "gastroparesis; thoracic spine disc protrusion; history of traumatic brain injury with cognitive dysfunction; headaches; history of asthma; Meniere's disease; hyperacusitus and tinnitus with associated dizziness and sensitivity to noise; history of plantar fasciitis; and depression, anxiety, [PTSD], and panic disorder."  (*Id.* (citation omitted).)

At step three, the ALJ found that Miles's impairments did not meet or medically equal any of the "listed" impairments in the Social Security regulations.  (R. at 19.)

Before proceeding to step four, the ALJ assessed Miles's residual functional

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

capacity ("RFC").  The ALJ concluded that Miles has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except she: can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; can tolerate a moderate level noise environment as defined by the Dictionary of Occupational Titles and its companion publication; can have no concentrated exposure to vibration or to dusts, fumes, gases, or other pulmonary irritants; can have no exposure to unprotected heights or dangerous, moving machinery; requires the ability to wear shaded glasses in bright light environments; is limited to simple, routine tasks with no more than 1–3 step instructions; can adapt to routine work duties with only occasional changes in the work setting; can have occasional interaction with supervisors and coworkers, but can have no interaction with the public.  (R. at 21.)  Then, at step four, the ALJ concluded that Miles is unable to perform any past relevant work.  (R. at 25.)

At step five, the ALJ found that Miles's RFC permitted her to work as a housekeeping cleaner, collator operator, and merchandise marker, and that all of those jobs exist in sufficient numbers in the national economy.  (R. at 26.)

Accordingly, the ALJ found that Miles was not entitled to Social Security benefits.  (R. at 26.)  Miles appealed to the Socials Security Appeals Council, which denied review (R. at 1.)  Miles then filed this action seeking review of the ALJ's June 19, 2019 decision.  (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal

standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a

preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is

overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257,

1261–62 (10th Cir. 2005).

In reviewing the Commissioner's decision, the Court may neither reweigh the

evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468

F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct

legal test, there is a ground for reversal apart from a lack of substantial evidence."

*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

Miles claims the ALJ erred in assessing the medical opinion evidence and

formulating her RFC.

### A.    Evaluation of the Medical Opinion Evidence

1.    Regulations Regarding Medical Opinion Evidence

For claims filed prior to March 27, 2017, the opinions of treating sources are

generally entitled to more weight. 20 C.F.R. § 416.927(c)(2). Treating-source opinions

are given "controlling weight" when they are "well-supported by medically acceptable

clinical and laboratory diagnostic techniques" and are "not inconsistent" with other

substantial evidence in the record. *Id.* § 416.927(c)(2); *see also Watkins v. Barnhart*,

350 F.3d 1297, 1300 (10th Cir. 2003).

However, for claims filed on or after March 27, 2017, the Government issued new

4

regulations that revise the procedures and standards for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c(a).  Under the new regulations, the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 416.920c(a).

Instead, the Commissioner will consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, the frequency of examinations; the purpose and extent of the treatment relationship, and the examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 416.920c(c)(1)–(c)(5).  The most important factors in evaluating persuasiveness are supportability and consistency.  20 C.F.R. § 416.920c(b)(2).  For supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."  *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).

Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."  *Id.* (citing 20 C.F.R. § 416.920c(c)(2)).  The ALJ must explain her approach with respect to these factors when considering a medical opinion, but she is not required to expound on the

remaining three factors unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical.  *Id.* § 416.920c(b)(2)–(3).

      2.    <u>Medical Opinion Evidence</u>

Advance Practice Nurse Emily Giometti submitted a medical source statement: (1) diagnosing Miles with PTSD, panic disorder, major depressive disorder, generalized anxiety disorder, bulimia nervosa, and borderline personality, and (2) opining that Miles has marked or extreme limitations in a work setting that will cause her to be absent from work more than four days per month.  (R. at 563–70.)  She also submitted a form in which she opines that Miles "has been or will be totally and permanently disabled to the extent that they are unable to work full time at any job due to a physical or mental impairment," with a qualifying disability of

> [m]ental or cognitive disorders, such as schizophrenia, affective disorders, personality disorders, developmental disabilities, or substance abuse to the extent that the disorder results in at least two of the following activities: - Marked restriction of daily activities; -Marked difficulties in maintaining social functioning; - Marked difficulties in maintaining concentration or pace; - Repeated decompensation for extended periods.

(R. at 1028.)

Licensed Clinical Social Worker Marilyn Wolfe also submitted a medical source statement, opining that: (1) Miles suffers from PTSD and a panic disorder, and (2) has marked and/or extreme limitations in many work functions, including problem solving, following 1-2 step oral instructions to carry out a task, using reason and judgment to make work-related decisions, cooperating with others, handling conflicts with others, completing tasks in a timely manner, working a full day without needing more than the

allotted number or length of rest periods during the day.  (R. 950–57.)  As a result,
Wolfe opines that she anticipates that Miles's impairments would cause her to be
absent from work more than four days per month.  (R. at 956.)

Non-treating physician Rita Flanagan, Ph.D. submitted an assessment of Miles
on January 4, 2018 that Miles would have moderate limitations in some work functions,
including her ability to carry out detailed instructions or maintain attention and
concentration for extended periods.  (R. at 76.)  However, she determined that Miles is
not significantly limited in other areas and would be able to work in a predictable setting
with routine work changes.  (R. at 78.)

The ALJ determined that the prior administrative findings of Dr. Flanagan were
persuasive because they were "supported by reference to the claimant's EEG showing
encephalopathic slowing and neuropsychological evaluations showing her functioning in
the borderline range" as well as "by the overall weight of evidence, showing that the
claimant was observed with some cognitive and mood impairments, but with largely
intact cognition and noted improvements after therapeutic treatment and regular
psychotropic medication."  (R. at 24.)

The ALJ further determined that Giometti and Wolfe's opinions were
unpersuasive, finding that the professionals' opinions "only minimally supported [their]
extreme and marked limitations with reference to the claimant's diagnoses, including
depression and PTSD, and did not provide significant reference to objective findings,"
and that their assessments were "not consistent with the overall weight of evidence,
which shows that the claimant was observed with some cognitive and mood
impairments, but with largely intact cognition and noted improvements after therapeutic

7

treatment and regular psychotropic medication."  (R. at 24.)  Instead, the ALJ

determined that

> [t]he claimant's treatment records indicate that both her
> cognitive deficits and symptoms of depression and anxiety
> were significantly improved with regular treatment and
> medication.  Indeed, in June 2018, one of the claimant's
> treatment providers assessed that the claimant's goals of
> cognitive therapy had been met, and no further treatment
> was indicated.  Additionally, the claimant appeared to be
> capable of significant activities of daily living during the
> period at issue.  Her function report states that she could do
> regular tasks such as laundry, grocery shopping, driving, and
> handling her own finances.  She also described that she
> enjoyed hiking, going to art classes, and reported to
> treatment providers that she attended concerts, took a trip to
> Moab, and walked a 5k race, which indicates she was
> significantly less limited than alleged at the hearing.  Overall,
> the evidence in the record demonstrates that the claimant
> retained the ability to perform the work outlined in her
> residual functional capacity.

(R. at 25 (internal citations omitted).)

Miles argues that the ALJ erred in evaluating the medical opinion evidence by

giving little weight to Giometti and Wolfe's opinions.  (ECF No. 18 at 5.)  She contends

that "the ALJ did not perform the appropriate analysis of medical evidence[ ] and failed

to give good reasons for elevating the opinions of non-treating and non-examining

physicians above those from providers who had a treatment relationship with her."  (*Id.*)

According to Miles, "[t]he ALJ was required to provide specific, legitimate reasons for

rejecting the opinions of Emily Giometti and Marilyn Wolfe."  (*Id.*)  She further argues

that it "makes no sense" for the ALJ to have "elevate[d] the opinions" of Dr. Flanagan or

to "give great weight to an assessment of Plaintiff for neurological disorder when the

ALJ does not really find that to be a severe impairment or evaluate whether such

8

condition meets/equals a listing of impairments."[2]  (*Id.* at 4–5.)

In response, the Commissioner argues that "Plaintiff's argument rests upon the previous version of the medical opinion regulations" and that the ALJ considered the required factors under § 416.920c and provided an explanation that is supported by substantial evidence in the record.  (ECF No. 19 at 15–20.)  The Court agrees.

As stated above, pursuant to the new regulations, the ALJ was required to focus on the persuasiveness of each medical source's opinions rather than deferring or giving controlling weight to the opinions of treating physicians.[3]  *Terri Ann B. v. Saul*, 2020 WL 7316099, at *6 (D. Kan. Dec. 11, 2020).  The ALJ's analysis confirms that she examined the medical opinions and prior administrative findings according to the new regulatory framework and correctly considered whether the various opinions in the record were persuasive.  *Cf.* 20 C.F.R. § 416.920c.

To be sure, the administrative record contains some evidence that Miles's conditions create significant limitations in the workplace.  However, the fact that the evidence could support another conclusion does not necessarily mean that the ALJ erred in her analysis.  *See Allman*, 813 F.3d at 1333 (recognizing the ALJ is entitled to resolve evidentiary conflicts where the record "contains support for both the notion that [claimant] has extreme deficiencies in concentration, persistence, and pace, and the

---

[2] To the extent Miles is arguing that the ALJ erred at step 2 by not finding a neurocognitive disorder to be a severe impairment, this is not reversible error.  *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (finding the "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe").  Here, the ALJ determined that Miles had numerous severe impairments.  (R. at 18.)

[3] Miles does not argue—and therefore the Court expressly does not reach the question of whether— the revised regulations are so arbitrary and capricious as to be outside the scope of the Commissioner's rule making authority, such that they are not binding on the Court.

notion that his mental limitations are not that severe"); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that "the ALJ is entitled to resolve any conflicts in the record"); *see also Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (stating that courts may not "displace the agency's choice between two fairly conflicting views").

After reviewing the administrative record, the Court concludes that there is substantial evidence supporting the ALJ's assessments of the persuasiveness of the medical opinion evidence.  For example, Giometti's opinion that Miles has "marked" limitations on maintaining personal hygiene and attire appropriate to a work situation (R. at 567) is contradicted by her own treatment notes, which consistently document Plaintiff's normal general appearance.  (*See* R. at 1863, 1871, 1879; *see also* R. at 548.)  Likewise, Giometti's opinion that Miles has extreme limitations in setting realistic goals and making plans for herself independently of others is contradicted by the fact that Miles engaged in numerous activities that required prior planning, including going to concerts and traveling to Moab.  (R. at 567, 1854, 1860.)

As the ALJ points out, neither Giometti nor Wolfe's opinions address the fact that Miles reported some improvements after therapeutic treatment and regular psychotropic medication.  (*See, e.g.*, R. at 24, 1725 (noting that Miles experienced a panic attack that went away after taking valium, and that adderall was helping with her anxiety); 1764 (noting that Miles was "showing improvement (superficial) subjective depression); 1781 (noting that buspar has been "helpful for general anxiety").)

The Court further notes that Giometti and Wolfe's opinions are inconsistent with each other at points, which further supports the ALJ's conclusion that their opinions were unpersuasive.  For example, Wolfe opines that Miles will have no difficulties

stating her own point of view, distinguishing between acceptable and unacceptable work performance, maintaining personal hygiene and attire appropriate to a work setting, and would only have mild difficulties initiating or sustaining conversation.  (R. at 952–54.) Giometti opines that Miles would have "marked" or "extreme" difficulties with each of these activities.  (R. at 565–67.)

Moreover, because Wolfe does not appear to have provided any treatment records and does not link any treatment records to her medical opinion, the Court cannot conclude that the ALJ erred by determining that her opinion is unpersuasive.[4]

Accordingly, the Court finds that the ALJ applied the correct legal standards in analyzing the medical opinions, and her conclusions were supported by substantial evidence in the record.  Thus, Miles's arguments that the ALJ erred in evaluating the medical evidence in the record are unavailing.

## B.    RFC Determination

Miles contends that "due to the faulty analysis of the medical evidence, an accurate assessment of Plaintiff's residual functional capacity to perform work activity was not made.  Therefore, the findings that support a denial at Step 5, must fail."  (ECF No. 18 at 9.)  However, because the Court concluded that the ALJ did not err in evaluating the medical evidence (*see infra* Part III.A), the Court cannot conclude that the ALJ's findings at Step 5 are erroneous.

## IV. CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial

---

[4] According to a letter from Miles's counsel to the ALJ, Wolfe "does not believe releasing her notes is in her patient's best interest."  (R. at 277.)

of benefits.  The Clerk shall enter judgment in favor of Defendant and terminate this

case.  Each party shall bear her or its own attorneys' fees and costs.

Dated this 21st day of July, 2021.

BY THE COURT:

William J. Martinez
United States District Judge

12